UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

STAR A. BOYLAN,

                Plaintiff,

      v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.

**DECISION AND ORDER**

11-CV-354 (VEB)

---

## I. INTRODUCTION

In October of 2008, Plaintiff Star A. Boylan applied for supplemental security income ("SSI") benefits and disability insurance benefits ("DIB") under the Social Security Act. Plaintiff alleges that she has been unable to work since July of 2007 due to physical and mental impairments. The Commissioner of Social Security denied Plaintiff's applications.

Plaintiff, by and through her attorneys, Olinsky and Shurtliff, Howard D. Olinsky, Esq., of counsel, commenced this action seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3). The parties, by and through their respective counsel, consented to the jurisdiction of a United States Magistrate Judge. (Docket No. 16).

## II. BACKGROUND

The relevant procedural history may be summarized as follows:

On October 27, 2008, Plaintiff applied for SSI benefits and DIB, alleging that she had

been unable to work since July 13, 2007. (T at 117-19, 120-25).[1] The Commissioner initially denied the applications and Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held in Syracuse, New York, on January 25, 2010, before ALJ Edward L. Pitts, who presided via videoconference from St. Louis, Missouri. (T at 26, 28). Plaintiff appeared with an attorney and testified. (T at 32-66).

On February 9, 2010, ALJ Pitts issued a written decision finding that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period and denying Plaintiff's claims for benefits. (T at 13-20). The ALJ's decision became the Commissioner's final decision on February 1, 2011, when the Appeals Council denied Plaintiff's request for review. (T at 1-3).

Plaintiff, by and through her attorney, timely commenced this action by filing a Complaint on March 30, 2011. (Docket No. 1). The Commissioner interposed an Answer on September 29, 2011. (Docket No. 9). Plaintiff filed a supporting Brief on November 13, 2011. (Docket No. 12). The Commissioner filed a Brief in opposition on December 27, 2011. (Docket No. 13).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[2]

For the reasons set forth below, Plaintiff's motion is granted, the Commissioner's motion is denied, and this case is remanded for calculation of benefits.

---

[1] Citations to "T" refer to the Administrative Transcript. (Docket No. 9).

[2] General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

2

## III. DISCUSSION

### A. Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado

v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[3]

While the claimant has the burden of proof as to the first four steps, the

---

[3]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.    Analysis**

    **1.    Commissioner's Decision**

The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2012, and had not engaged in substantial gainful activity since July 13, 2007, the alleged onset date. (T at 15).

The ALJ found that Plaintiff had the following impairments considered "severe" under the applicable Social Security Regulations (the "Regulations"): psoriasis and osteoporosis. (T at 15). However, the ALJ determined that Plaintiff's medically determinable impairments did not meet or equal one of the impairments listed in Appendix I of the Regulations (the "Listings"). (T at 16).

After reviewing the medical evidence, the ALJ concluded that Plaintiff retained the residual functional capacity to perform somewhat less than the full range of light work as defined in 20 C.F.R. § 404.1567 (b) and 416.967 (b). (T at 16-18). The ALJ found that Plaintiff was unable to perform any of her past relevant work as a transplanter, cashier, and

house cleaner. (T at 22).

Considering Plaintiff's residual functional capacity, age (49 years old on the alleged onset date), education (limited), and work experience, the ALJ determined that Plaintiff was able to perform jobs that exist in significant numbers in the national economy. (T at 19-20). Accordingly, the ALJ concluded that Plaintiff had not been under a "disability," as that term is defined under the Act, from the alleged onset date (July 13, 2007) through the date of the ALJ's decision (February 9, 2010), and was therefore not entitled to benefits. (T at 20). As noted above, the ALJ's decision became the Commissioner's final decision on February 1, 2011, when the Appeals Council denied Plaintiff's request for review. (T at 1-3).

### 2. Plaintiff's Claims

Plaintiff argues that the Commissioner's decision should be reversed. She offers four (4) principal arguments in support of her position. First, Plaintiff argues that the ALJ should have determined that her impairments met or medically equaled the impairment set forth at § 8.05 of the Listings. Second, Plaintiff contends that the ALJ's residual functional capacity determination is not supported by substantial evidence. Third, Plaintiff challenges the ALJ's credibility determination. Fourth, Plaintiff argues that the ALJ should have consulted a vocational expert. Each argument will be addressed in turn.

#### a. Section 8.05 of the Listings

Impairments listed in Appendix 1 of the Social Security Regulations are "acknowledged by the [Commissioner] to be of sufficient severity to preclude" substantial gainful activity. Accordingly, a claimant who meets or equals a Listing is "conclusively presumed to be disabled and entitled to benefits." Dixon v. Shalala, 54 F.3d 1019, 1022 (2d

Cir.1995); see 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) ("If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.").

The claimant bears the burden of establishing that his or her impairments match a Listing or are equal in severity to a Listing. See Naegele v. Barnhart, 433 F. Supp.2d 319, 324 (W.D.N.Y. 2006) ("It must be remembered that plaintiff has the burden of proof at step 3 that she meets the Listing requirements.").

To show that an impairment matches a Listing, the claimant must show that his or her impairments meet all of the specified criteria. Sullivan v. Zebley, 493 U.S. 521, 530 (1990); 20 C.F.R. § 416.925(d). If a claimant's impairment "manifests only some of those criteria, no matter how severely," the impairment does not qualify. Sullivan, 493 U.S. at 530. To satisfy this burden the claimant must offer medical findings equal in severity to all requirements, which findings must be supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 416.926(b). Abnormal physical findings "must be shown to persist on repeated examinations despite therapy." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(B). Further, the medical reports must indicate physical limitations based upon actual observations and/or clinical tests, rather than the claimant's subjective complaints. Id.

The impairment set forth at § 8.05 of the Listings (Dermatitis) involves "extensive skin lesions that persist for at least 3 months despite continuing treatment as prescribed." Section 8.00 of the Listings defines "extensive skin lesions" as lesions "that involve multiple body sites or critical body areas, and result in a very serious limitation." As an example, the Listing provides "Skin lesions on the palms of both hands that very seriously limit [the

7

claimant's] ability to do fine and gross motor movements."

In the present case, there is no question that Plaintiff suffers from psoriasis, resulting in skin lesions that persistent for at least three months, notwithstanding Plaintiff's compliance with prescribed treatment.[4] The ALJ determined that Plaintiff's psoriasis was a severe impairment. (T at 15). However, the ALJ concluded, without detailed explanation, that Plaintiff did not satisfy Listing § 8.05 because she did not have "a psoriasis condition with extensive skin lesions that persist for at least 3 months despite continuing treatment as prescribed." (T at 16). For the following reasons, this Court finds that the ALJ's conclusion was not supported by substantial evidence.

The ALJ afforded "significant weight" to a consultative examination performed by Dr. Kalyani Ganesh. In December of 2008, Dr. Ganesh indicated that Plaintiff was "able to do all fine motor activities." (T at 243). He found Plaintiff's hand and finger "dexterity . . . quite intact despite the scaly lesion." (T at 244). Dr. Ganesh observed that Plaintiff was able to tie a bow, manipulate a button, a zipper, and Velcro. (T at 244).

However, Dr, Ganesh examined Plaintiff on a single occasion and his opinion was therefore entitled to only limited weight. See Crespo v. Apfel, No. 97 CIV 4777, 1999 WL 144483, at *7 (S.D.N.Y. Mar. 17,1999) ("In making a substantial evidence evaluation, a consulting physician's opinions or report should be given limited weight" because "they are often brief, are generally performed without benefit or review of the claimant's medical history and, at best, only give a glimpse of the claimant on a single day."); Garzona v.

---

[4]Psoriasis is a skin condition characterized by skin redness, lesions, and irritation. See http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001470/ (last accessed August 17, 2012).

Apfel, No. 96 CV 6249, 1998 WL 643645, at *1 (E.D.N.Y. Sep. 18, 1998)("[T]he opinion of a non-examining consultative physician, without more, [is] insufficient to constitute the requisite contrary substantial evidence" to override a treating physician's assessment.").

In contrast, Dr. Mulholland, one of Plaintiff's treating physicians, opined that Plaintiff could not perform simple grasping, pushing/pulling, or fine manipulations due to her skin condition. (T at 267). Dr. Mulholland described Plaintiff's psoriasis as "severe" and indicated that working with her hands would "worsen" Plaintiff's condition and put her at risk of infection. (T at 267).

The ALJ discounted Dr. Mulholland's assessment because the ALJ believed Dr. Mulholland was "not providing treatment for [Plaintiff's] psoriasis." (T at 18). However, this is simply not accurate. While Plaintiff did treat with a dermatologist (Dr. Ahn) on occasion, Plaintiff was often unable to see Dr. Ahn due to insurance reimbursement issues and Dr. Mulholland frequently treated Plaintiff for her skin condition. (T at 218-19, 223-23, 225-26, 256-59, 260, 267). In treatment notes, Dr. Mulholland described Plaintiff's hands as "very dry, cracked, [and] red" and noted that her hands were a "continuous problem." (T at 223, 265, 266). He indicated that Plaintiff's skin condition was "severe," described Plaintiff as "quite disabled" by the condition, and opined that contact with chemicals or getting her hands wet would cause "significant worsening of her symptoms." (T at 225).

Moreover, when discounting Dr. Mulholland's opinion, the ALJ failed to account for the fact that the physician's assessment was supported by the findings of Dr. Ahn, Plaintiff's dermatologist. Dr. Ahn was provided with a disability form in November of 2008. Although he failed to make any specific finding regarding Plaintiff's limitations, Dr. Ahn described Plaintiff's psoriasis as "severe," "uncontrolled," "resistant," "very sore," and

9

characterized by "erosions" and "linear fissuring (cracking [and] bleeding)." (T at 181). Dr. Ahn's treatment notes clearly demonstrated that Plaintiff's condition was severe and extremely painful. (T at 183-86). Although some relief was periodically obtained from certain medications, the condition was poorly controlled and largely resistant to treatment. (T at 181, 183-86).

Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).[5]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances. In this regard, the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); see also de Roman, 2003 WL 21511160, at *9; Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998); Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998) .

---

[5]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

In the present case, the record demonstrates that Dr. Mulholland was a treating physician with respect to Plaintiff's psoriasis and that his opinion concerning Plaintiff's gross and fine motor limitations was supported by his treatment notes and the opinion of Dr. Ahn, Plaintiff's treating dermatologist. Thus, the ALJ erred in discounting Dr. Mulholland's opinion, which should have been given controlling weight. When Dr. Mulholland's assessment is given its proper weight and considered in light of the other evidence, the record indicates only one reasonable conclusion, namely, that Plaintiff suffers from extensive skin lesions that persist for a period of greater than 3 months despite her compliance with prescribed treatment. Further, these lesions very seriously limit Plaintiff's ability to perform gross and fine motor activities with both of her hands. As such, Plaintiff's psoriasis meets or medically equals the impairment set forth in § 8.05 of the Listings. Although this finding means that Plaintiff is entitled to benefits without further analysis, this Court will consider the remainder of Plaintiff's arguments, which provide further support for this Court's decision to remand this case for calculation of benefits.

### b. RFC Determination

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making a residual functional capacity determination, the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other

limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a). An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations. LaPorta v. Bowen, 737 F.Supp. 180, 183 (N.D.N.Y.1990).

In the present case, the ALJ determined that Plaintiff retained the RFC to lift and carry up to 20 pounds occasionally and 10 pounds frequently. (T at 16). He concluded that Plaintiff had "limited use of both hands for repetitive grasping and can only use her hands up to one third of the day for fine manipulation." (T at 16). The ALJ assessed that Plaintiff should "avoid extreme cold and extreme wetness which would aggravate her psoriasis as well as the use of chemicals and irritants." (T at 16). As such, the ALJ found that Plaintiff retained the RFC to perform "somewhat less" than the full range of light work as defined in 20 C.F.R. § 404.1567 (b) and 416.967 (b).

As a threshold matter, Plaintiff correctly points out that the ALJ did not perform a full function-by-function analysis, as required under the applicable Regulations. In sum, to determine RFC, the ALJ must make a function by function assessment of the claimant's ability to sit, stand, walk, lift, carry, push, pull, reach, handle, stoop, or crouch, based on medical reports from acceptable medical sources that include the sources' opinions as to the claimant's ability to perform each activity. 20 C.F.R. § 404.1513(c)(1); §§ 404.1569a(a), 416.969a(a); Martone v. Apfel, 70 F. Supp.2d 145, 150 (N.D.N.Y.1999). RFC be expressed in terms of the exertional levels of work (i.e. sedentary, light, medium, heavy, and very heavy) only after the function-by-function analysis is completed. Hogan v. Astrue, 491 F. Supp.2d 347, 354 (W.D.N.Y.2007).

The courts are divided as to whether the failure to provide a function-by-function

analysis is *per se* grounds for remand or whether it may constitute harmless error. See, e.g., Wood v. Comm'r of Soc. Sec., No. 06-CV-157, 2009 WL 1362971, at *6 (N.D.N.Y. May 14, 2009)(collecting cases); Casino-Ortiz v. Astrue, No. 06 Civ. 0155(DAB)(JCF), 2007 WL 2745704, at * 13 (S.D.N.Y. Sept. 21, 2007)(supporting harmless error analysis); McMullen v. Astrue, No. 5:05-CV-1484 (LEK/GHL), 2008 WL 3884359, at *6 (N.D.N.Y. Aug. 18, 2008) ("[T]he ALJ erred in determining that Plaintiff could do light work before fully assessing his work-related abilities on a function-by-function basis. The ALJ failed to specify the weight that Plaintiff could lift and/or carry or the amount of time that he could sit, walk, and stand."); Brown v. Barnhart, No. 01-CV-2962 (JG), 2002 WL 603044, at *5 & n. 5 (E.D.N.Y. Apr.15, 2002) (remanding because ALJ failed to perform function-by-function analysis).

This Court need not resolve the question in this case. The ALJ's determination with regard to Plaintiff's ability to use her hands (i.e. "limited use of both hands for repetitive grasping and can only use her hands up to one third of the day for fine manipulation") (T at 16) was inconsistent with the opinion rendered by Dr. Mulholland, who indicated that Plaintiff could not perform even simple grasping, pushing/pulling, or fine manipulations. (T at 267). For the reasons outlined above, the ALJ errorneously concluded that Dr. Mulholland had not treated Plaintiff's skin condition and improperly discounted the opinion of this treating physician, which was also supported by the findings of the treating dermatologist. The RFC determination therefore also cannot be sustained.

    **c.**    **Credibility**

Courts in the Second Circuit have determined pain is an important element in DIB

and SSI claims, and pain evidence must be thoroughly considered. See Ber v. Celebrezze, 333 F.2d 923 (2d Cir.1994). Further, if an ALJ rejects a claimant's testimony of pain and limitations, he or she must be explicit in the reasons for rejecting the testimony. See Brandon v. Bowen, 666 F.Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." Lewis v. Apfel, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's contention of pain, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....
>
> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the plaintiff's pain contentions are not supported by objective medical evidence, the ALJ must

consider the following factors in order to make a determination regarding the plaintiff's credibility:

1. [Plaintiff's] daily activities;
2. The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
3. Precipitating and aggravating factors;
4. The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
5. Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;
6. Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;
7. Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's pain contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F. Supp 604, 608 (S.D.N.Y.1987)).

In the present case, Plaintiff testified that her hands are constantly rough, with her skin peeling, cracking, and bleeding. (T at 38). The problems persist despite treatment, (T at 38, 58-59). She can push the buttons on a remote control and operate the microwave; but cannot use a knife or type on a computer. (T at 47-48). Her children assist with her activities of daily living. (T at 49-51). Her ability to drive is affected by her skin condition. (T at 56).

The ALJ found Plaintiff's testimony "generally credible" and concluded that her medically determinable impairments could reasonably be expected to cause the alleged

15

symptoms. (T at 17). However, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible to the extent they were inconsistent with the ALJ's RFC assessment. (T at 17). For the reasons outlined above, the ALJ's RFC assessment was flawed. Likewise, the ALJ did not adequately assess the treating physician's opinion and, thus, did not appropriately consider the extent to which Dr. Mulholland's findings bolstered Plaintiff's credibility. Plaintiff's testimony, as supplemented by the opinions and notes of Dr. Mulholland and Dr. Ahn, established that her skin condition very seriously impairs her ability to perform gross and fine motor activities with her hands. The ALJ's decision to discount that testimony and conclude that Plaintiff was only "somewhat" limited in this regard was not supported by substantial evidence and, in fact, was contradicted by evidence that should have been afforded controlling weight.

### d. Consultation with a Vocational Expert

At step 5 in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering his physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). The second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). See Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir.1986).

The function of the Grids was succinctly summarized by the court in Zorilla v.

Chater, 915 F. Supp. 662, 667 (S.D.N.Y.1996) as follows:

> In meeting [his] burden of proof on the fifth step of the sequential evaluation process described above, the Commissioner, under appropriate circumstances, may rely on the medical-vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grid." The Grid takes into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience. Based on these factors, the Grid indicates whether the claimant can engage in any other substantial gainful work which exists in the national economy. Generally the result listed in the Grid is dispositive on the issue of disability.

Id.

"The Grid classifies work into five categories based on the exertional requirements of the different jobs. Specifically, it divides work into sedentary, light, medium, heavy and very heavy, based on the extent of requirements in the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, and pulling." Id. at 667 n. 2; see 20 C.F.R. § 404.1567(a). Upon consideration of the claimant's residual functional capacity, age, education, and prior work experience, the Grid yields a decision of "disabled" or "not disabled." 20 C.F.R. § 404.1569, § 404 Subpt. P, App. 2, 200.00(a).

If the claimant has nonexertional impairments, the ALJ must determine whether those impairments "significantly" diminish the claimant's work capacity beyond that caused by his or her exertional limitations. Id. A claimant's work capacity is "'significantly diminished' if there is an 'additional loss of work capacity . . . that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity.'" Id. (quoting Bapp, 802 F.2d at 606).

If a claimant's work capacity is significantly diminished by non-exertional

impairments beyond that caused by his or her exertional impairment(s), then the use of the Grids may be an inappropriate method of determining a claimant's residual functional capacity and the ALJ may be required to consult a vocational expert. See Pratts v. Chater, 94 F.3d 34, 39 (2d Cir.1996); Bapp v. Bowen, 802 F.2d 601, 604-605 (2d Cir.1986).

In this case, the ALJ used the Grids in reaching his disability determination. Specifically, the ALJ concluded that a finding of "not disabled" was warranted under the framework of Medical-Vocational Rule 202.18 based upon Plaintiff's age, education, work experience, and ability to perform somewhat less than the full range of light work. (T at 19). The ALJ's finding was based upon his RFC determination, which was flawed for the reasons stated above. Moreover, the ALJ's conclusion that Plaintiff's non-exertional limitations had "little to no effect on the occupational base of unskilled light work" (T at 19) is not supported by substantial evidence. As outlined above, the evidence of record (including, in particular, assessments from Plaintiff's treating physician and dermatologist, as well as her testimony) demonstrates that Plaintiff has a severe, extremely painful, and persistent skin condition that very seriously limits her ability to perform gross and fine motor manipulations with her hands on anything approaching a sustained basis. Accordingly, the ALJ's analysis at step five likewise cannot be sustained.

### 3. Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)). Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper

disposition of [a] claim." Kirkland v. Astrue, No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008).

Under the Second Circuit's rulings, a remand solely for calculation of benefits may be appropriate when the court finds that there is "no apparent basis to conclude that a more complete record might support the Commissioner's decision...." Butts v. Barnhart, 388 F.3d 377, 385-86 (2d Cir.2004) (quoting Rosa v. Callahan, 168 F.3d 72, 83 (2d Cir.1999)); see also Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) (remand for calculation of benefits appropriate where record "compel[s] but one conclusion under the ... substantial evidence standard."); Parker v. Harris, 626 F.2d 225, 235 (2d Cir.1980) (remand solely for calculation of benefits appropriate where "the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose").

In the present case, this Court finds persuasive proof of disability for the reasons outlined in detail above, including the opinions rendered by Dr. Mulholland (the treating psychiatrist) and Dr. Ahn (the treating dermatologist), as well as Plaintiff's testimony. In particular, the record contains persuasive proof that the Plaintiff's skin condition meets or medically equals the impairment set forth at Section 8.05 of the Listings. This Court concludes that a remand for further evidentiary proceedings would serve no purpose. As such, this Court directs a remand for calculation of benefits.

**IV. ORDERS**

The Commissioner's Motion for Judgment on the Pleadings is DENIED; Plaintiff's Motion for Judgment on the Pleadings is GRANTED; this case is remanded for the calculation of benefits; the Clerk of the Court shall enter Judgment accordingly and close this case.

SO ORDERED.

Victor E. Bianchini
United States Magistrate Judge

Dated: September 24, 2012

Syracuse, New York